

# PROVIDENT LAW

# Exhibit J



**PROVIDENT LAW®**
14646 N. Kierland Blvd, Suite 230
Scottsdale, Arizona 85254
480-388-3343 (Office)
602-753-1270 (Fax)
www.providentlawyers.com

**Erik Stanley**
Attorney
erik@providentlawyers.com

June 25, 2021

**Via Facsimile (928) 771-3242 and Regular Mail to:**
David Williams, Director
Yavapai County Planning Division
1120 Commerce Drive
Prescott, AZ 86305

**Via Facsimile (928) 771-3110 and Regular Mail to:**
Sheila Polk, County Attorney
Yavapai County
255 E Gurley Street
Prescott, AZ 86301

Re: Divine Grace Yoga Ashram Cease and Desist Order for 10080 E. Crozier Ranch Road, Cornville, AZ 86325 (the "Property")
Our File: 001948.1

Dear Mr. Williams and Ms. Polk:

This Firm has been retained to represent Divine Grace Yoga Ashram ("Divine Grace") with regard to a cease-and-desist directive it received on January 21, 2021, from Leah Brock, Senior Planner with the Yavapai County Development Services Department. The purpose of this letter is to set forth the facts of this matter, the applicable law, and to demand that the County immediately withdraw the cease-and-desist directive and allow Divine Grace to operate as a church on its Property. The purpose of this letter is hopefully to also resolve this matter peacefully with the County.

**Factual Background**

Divine Grace is organized and operates as a church. The IRS recognizes Divine Grace as an exempt organization and as a church. Divine Grace operates a house of worship, known as an Ashram, on the Property. The Property is a 12.6-acre parcel along Oak Creek that contains a residential home and some outbuildings. *See* Results of Survey attached as **Exhibit "A"**. The Property is currently zoned R1L which is a residentially zoned district.

Divine Grace conducts worship activities on the Property for its small community. These activities include prayer, meditation, singing,

Mr. Williams and Ms. Polk
June 25, 2021
Page 2

practicing Yoga asanas (meditation poses), cooking, cleaning, and serving. The Ashram also offers programs for the community that are helpful in overcoming life difficulties including addictions, relational difficulties, anger, pain, and other such issues. The community at the Ashram is small and its activities are entirely contained on the Property. Because the Property is mostly isolated from surrounding neighbors, the Ashram and its activities are unobtrusive. *See* aerial of Ashram below:



The Ashram received a directive from Yavapai County's Development Services Department on January 21, 2021. The directive stated that Divine Grace's operations as a church are "not allowed in a residential zoning district. To bring your property into compliance, you have two options: 1) Cease and desist all non-residential activities; or 2) Apply for an obtain a Use Permit to allow the use of the parcel as a Religious Institution." A conversation between Swami Sankarananda and Leah Brock, Senior Planner for Yavapai County, yielded no resolution since Ms. Brock stated that it would be unlikely that a Use Permit would be granted should Divine Grace apply for one.

In response to the cease-and-desist directive, Divine Grace has ceased its worship and church activities and has not been able to freely worship or use its Property as a church.

**14646 N. Kierland Boulevard, Suite 230**
**Scottsdale, Arizona 85254**
www.providentlawyers.com


PROVIDENT LAW

**(480) 388-3343 (Office)**
**(602) 753-1270 (Fax)**

Mr. Williams and Ms. Polk
June 25, 2021
Page 3

## Legal Analysis

The R1L zoning district is a residential, single family district limited to site-built structures only. *See* Yavapai County Planning and Zoning Ordinance ("Ordinance") § 410. The Ordinance allows for religious institutions in permanent site-built buildings only upon Conditional Use Permit approval. *See* Ordinance § 410(B). The R1L Ordinance allows for various permitted uses including assembly uses such as "Community parks, playgrounds or centers when part of a community plan." Ordinance § 410(D).

Per state law, other assembly uses are allowed as permitted including public and charter schools. *See* A.R.S. § 15-189.01(A); *see also* Ariz. Att'y Gen. Op. I15-001 (2015) (charter schools are not subject to local zoning laws and ordinances); Ariz. Att'y Gen. Op. I83-052 (1983) ("when a school district uses a building or property for a public school, the school district is not subject to any local zoning laws of the municipality in which the school building is located"… "school districts are political subdivisions of this State and political subdivisions are exempt from the regulations of other political subdivisions." (citing *Amphitheater Unified School District No. 10 v. Harte*, 128 Ariz. 233, 234, 624 P.2d 1281, 1282 (1981) and *City of Scottsdale v. Municipal Court of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962)).

Thus, the Ordinance and state law both permit secular assembly and institution uses such as community centers, public schools, and charter schools in the R1L zoning district (and without the site-built requirement) yet churches are not permitted uses but must go through a Conditional Use Permit process and are limited to site-built buildings.

This unequal treatment violates both federal and state law.

### A. The unequal treatment violates RLUIPA.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc*, et seq.*, prohibits unequal treatment of religious and secular assemblies or institutions. There are four elements to an unequal treatment claim:

(1) There must be an imposition or implementation of a land-use regulation,
(2) By a government,
(3) On a religious assembly or institution,
(4) On less than equal terms with a nonreligious assembly or institution.

*See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1170–71 (9th Cir. 2011). All four of these elements are present here. "Congress expressly provided for broad construction in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter." *Id.* The Ninth Circuit has stated that the government violates the equal terms provision of RLUIPA "when a church is treated on a less than equal basis with a secular comparator, similarly, situated with respect to an accepted zoning criteria. The burden is not on the church to show a similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance." *See id*. at 1173.

**14646 N. Kierland Boulevard, Suite 230**
**Scottsdale, Arizona 85254**
www.providentlawyers.com


PROVIDENT LAW

**(480) 388-3343 (Office)**
**(602) 753-1270 (Fax)**

Mr. Williams and Ms. Polk
June 25, 2021
Page 4

Here, the face of the ordinance plainly demonstrates unequal treatment in that it allows for community centers, public schools, and charter schools as permitted uses but holds churches to a different standard. This unequal treatment exists regardless of what "accepted zoning criteria" the County employs—whether it be traffic, noise, congestion, or any other development standard. Public schools, charter schools, and community centers are exactly comparable to the Divine Grace Ashram yet are given preferable treatment in the County Zoning Ordinance.

The County should be aware that any litigation to enforce RLUIPA's mandates will result in an award of attorneys' fees and costs if Divine Grace is the prevailing party. *See* 42 U.S.C. § 1988.

**B.     The unequal treatment violates FERA**.

The unequal treatment by the County also violates Arizona's Free Exercise of Religion Act ("FERA"). *See* A.R.S. § 41-1493, *et seq*. By its terms, FERA states: "Government shall not impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, regardless of a compelling governmental interest." A.R.S. § 41-1493.03(B).  FERA specifically notes that "Free exercise of religion is a fundamental right that applies in this state even if laws, rules or other government actions are facially neutral." A.R.S. § 41-1493.01(A). "The legislature passed FERA in 1999 to protect Arizona citizens' right to exercise their religious beliefs free from undue governmental interference." *State v. Hardesty*, 222 Ariz. 363, 365, 214 P.3d 1004, 1006 (Ariz. 2009).

FERA is broader in its reach and application than RLUIPA. A FERA plaintiff does not have to demonstrate the same elements as a RLUIPA equal terms violation. Nor does a FERA plaintiff need to demonstrate that a secular assembly or institution use is "similarly situated with respect to an accepted zoning criteria". Instead, if a nonreligious assembly or institution is treated more preferably than a religious assembly or institution, FERA applies to prohibit such unequal application.

This is the case here since community centers, public schools, and charter schools are given more preferential treatment in the R1L zoning district than churches. The County's cease-and-desist directive thus violates FERA.

Similar to RLUIPA, FERA contains a fee shifting provisions that allows the prevailing party to recover its attorneys' fees and costs against the government. *See* A.R.S. § 41-1493.01(D).

**C.     The County's admission of the unequal treatment on the face of the Ordinance**.

Mr. Williams has admitted the unequal treatment inherent in the R1L zoning district on at least two occasions before the Planning and Zoning Commission. On January 16, 2020, the Commission considered a proposed amendment to Section 410 of the Ordinance. The purpose of the proposed amendment was stated by Mr. Williams:

> Mr. Williams said this was to square up Development Services with Arizona State law for the Freedom of Exercise Religious Activities Act. He said **the current ordinance was not**



**14646 N. Kierland Boulevard, Suite 230**  **(480) 388-3343 (Office)**
**Scottsdale, Arizona 85254**  **(602) 753-1270 (Fax)**
www.providentlawyers.com

PROVIDENT LAW

> ***in compliance with this act*** and this was a housekeeping item to make sure they were in compliance with State law.
>
> Commissioner Griffis asked what compliance meant.
>
> Mr. Williams said in this case it meant that religious institutions must be treated in a similar fashion to a similar use that would be allowed in that zoning district. He said the similar use would be an institutional use such as a public school and that public schools were exempt from the Zoning Ordinance and could go into any zoning district that was appropriate. Mr. Williams went on to say removing that requirement for the conditional Use Permit and removing the requirement for site built addressed issues that would bring them into compliance with State law.

(emphasis added).

In response to a question regarding where religious institutions could locate, Mr. Williams responded by stating that "if an application were currently received, he would be in a position of having to interpret the Ordinance and State law and make an interpretation that it would be allowed anyway."

The matter again came before the Planning and Zoning Commission on February 6, 2020. The following exchange again shows the County's admission that its current Ordinance is not in compliance with FERA:

> Commissioner Mumaw said he had a lot of concerns over this Zoning Ordinance Amendment. He commented as the Ordinance stood, a religious institution was only allowed in a residential area after it had gone through a Use Permit process. He went on to say the change in language would eliminate that procedure and that it had been determined Yavapai County was not in line with State statute.
>
> Mr. Williams said that was correct. He then read ARS Statute 41-149303 "The government shall not empower or implement land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a non-religious assembly or institution regardless of the compelling governmental interest". He said the related assembly and institutional use would be a public school in a residential area and that public schools did not require Use Permits.
>
> Commissioner Mumaw asked what the downside was if Yavapai County did not come into compliance with State statute.
>
> Mr. Williams replied that the County may be subject to additional litigation.

Some of the comments from the Commissioners during the hearings are troubling in that they acknowledge the unequal treatment that exists but are more concerned with allowing the public to have input and essentially a veto power over religious institutions that does not exist for other secular assemblies or institutions. One Commissioner even suggested that the County leave this up to the Courts to force the County to comply with FERA. During the hearing, numerous citizens spoke in opposition to

14646 N. Kierland Boulevard, Suite 230
Scottsdale, Arizona 85254
www.providentlawyers.com



PROVIDENT LAW

(480) 388-3343 (Office)
(602) 753-1270 (Fax)

the proposed amendment to eliminate the unequal treatment and demanded to have oversight and control over where churches could locate.

Situations precisely like this were why Congress passed RLUIPA and why the Legislature passed FERA. RLUIPA was passed in 2000 after testimony before Congress demonstrated broad and systemic discrimination against religious institutions. Congress found that churches were subject to inherently vague political processes where unequal treatment was countenanced because neighbors or politically powerful influences were in opposition. RLUIPA and FERA were intended to remove churches from the political process of zoning approvals such as conditional use permits in instances where those requirements were not put on comparable secular assemblies or institutions.

## Conclusion

Divine Grace is marked by a desire for peace and to bring peace to its members and the surrounding community. It is not Divine Grace's desire to bring litigation against the County it desires to serve. It instead wants to be a force for blessing and peace to Yavapai County government and its citizens. However, Divine Grace is in the position where it must demand that it be treated on equal terms with other secular assemblies and institutions allowed as permitted uses in the R1L district.

It is Divine Grace's hope that the County acknowledges and remedies the discrimination without the need for costly litigation. To that end, Divine Grace requests a formal interpretation of the Yavapai County Zoning Ordinance that it is a permitted use in the R1L district and will not be subject to a Use Permit process. Divine Grace also demands that the County immediately withdraw the cease-and-desist directive and allow it to freely exercise its religion.

Given the fact that, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), I request that the County respond to this letter **no later than 4:00 pm on Friday, July 2** confirming that the cease-and-desist directive has been lifted and that Divine Grace is free to worship on its Property.

I look forward to your favorable response.

    Sincerely,
    **PROVIDENT LAW®**

    Erik W. Stanley
    Attorney

EWS:ss

cc: Swami Sankarananda, Divine Grace Yoga Ashram (*via email*)

14646 N. Kierland Boulevard, Suite 230
Scottsdale, Arizona 85254
www.providentlawyers.com


PROVIDENT LAW

(480) 388-3343 (Office)
(602) 753-1270 (Fax)



# Exhibit A

