**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Divine Grace Yoga Ashram Incorporated, | No. CV-21-08221-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| County of Yavapai, et al., | |
| Defendant. | |

Pending before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 6) and its associated Motion for Summary Disposition (Doc. 19). Defendant has failed to respond to the Motion for Preliminary Injunction. However, Defendant has filed a Response to the Motion for Summary Disposition (Doc. 22), and Plaintiff has filed a corresponding Reply (Doc. 23). Also pending before the Court is Defendant's Partial Motion to Dismiss and Motion to Remand State Law Claim (Doc. 17). Plaintiff has filed a Response (Doc. 20), and Defendant has filed a Reply (Doc. 21).

The Court has also requested additional briefing from the parties regarding the interpretation of the Yavapai County's Planning and Zoning Ordinance (Doc. 24). Plaintiff filed a Supplemental Brief (Doc. 25), as did Defendant (Doc. 26).

For the following reasons, the Court denies Plaintiff's Motion for Preliminary Injunction and its associated Motion for Summary Disposition. The Court also grants in part and denies in part Defendant's Partial Motion to Dismiss.[1]

---

[1] The parties have requested oral argument. (Docs. 6; 17; 22). The Court denies these requests as the matters are sufficiently briefed and further argumentation will not assist the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      Background

Plaintiff Divine Grace Yoga Ashram Incorporated filed its Complaint on October 13, 2021.  (Doc. 1).  Plaintiff operates a church in Cornville, Arizona on an old ranch property (the "Property"), which consists of 12.6 acres of land abutting the Coconino National Forest.  (*Id.* at ¶¶  19, 22, 24).  About ten of Plaintiff's members live on the Property.  (*Id.* at ¶ 37).  The members begin their day early in the morning and "pray, serve, meditate, sing breath properly, practice Yoga asanas, cook healthy meals, clean and other activities, all as an offering to God."  (*Id.* at ¶ 30).  Plaintiff also offers a variety of week-long and weekend retreats, such as a "week-long silent retreat and weekend motherhood Yoga retreats."  (*Id.* at ¶ 33).  Plaintiff alleges it does not conduct any commercial activity on the Property and does not intend to do so in the future.  (*Id.* at ¶ 34).

The Property itself is governed by Defendant Yavapai County's Planning and Zoning Ordinance (the "Ordinance").  (*Id.* at ¶¶ 19, 38).  Under the Ordinance, the Property is located in a residential, single-family district, referred to as a "R1L" zone.  (*Id.* at ¶¶ 39–40).  In order for a religious institution to operate in permanent site-built buildings within a R1L zone, the institution must first obtain an approved Conditional Use Permit ("CUP").  (*Id.* at ¶ 41).

On October 29, 2020, Plaintiff sent a letter to the Development Services Director for Yavapai County asserting that Plaintiff was exempt from the CUP requirement because Yavapai County treats Plaintiff differently than non-religious institutions.  (*Id.* at ¶ 86).  Around that same time, the Yavapai County Planning and Zoning Commission had been discussing whether the Ordinance's requirements for religious institutions complied with Arizona law.  (*Id.* at ¶¶ 52–82).  Shortly after Plaintiff's letter, the County Board of Supervisors amended the Ordinance in such a way that private schools were also required to obtain a CUP to operate in R1L properties.  (*Id.* at ¶¶ 75, 88).  Plaintiff alleges that despite the amendment, the current Ordinance still permits public schools and charter schools to operate in the R1L zoning district without an approved CUP.  (*Id.* at ¶¶ 81, 82).

Court with its decision.  *See* Fed. R. Civ. P. 78(b) (stating that a court may decide motions without oral hearings); LRCiv 7.2(f) (same).

1       As it stands today, Section 410 of the Ordinance governing R1L districts permits a

2   range of uses including, but not limited to, single family homes, community centers that

3   are part of a community plan, and bed and breakfasts that are subject to administrative

4   review and comment.  (Doc. 1-8 at 6–8).  Religious institutions and privately funded

5   educational institutions are permitted uses "upon Conditional Use Permit approval."  (*Id.*

6   at 6).  Section 410 does not explicitly mention public schools or charter schools.  However,

7   section 201(A)(3) states that "publicly owned and operated facilities used for essential

8   government purposes" are exempt from all of the Ordinance's provisions.  (Doc. 25 at 2).

9       On or about January 20, 2021, the Senior Planner of Yavapai County's

10  Development Services Department called Plaintiff and stated that Plaintiff must cease and

11  desist its operations unless it secured a CUP.  (Doc. 1 at ¶¶ 90–93).  Plaintiff ceased its

12  operations in response.  (*Id.* at ¶ 98).  Plaintiff alleges it has not been able to meet on the

13  Property for religious purposes since February 2021.  (*Id.* at ¶ 102).  Plaintiff does not wish

14  to apply for a CUP "due to the expense and delay associated with the Permit process."  (*Id.*

15  at ¶ 104).

16      Plaintiff brings four counts against Defendant.  Count 1 alleges that the Ordinance

17  violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (*Id.* at ¶¶

18  113–25).  Count 2 alleges that the Ordinance violates Arizona's Free Exercise of Religion

19  Act ("FERA").  (*Id.* at ¶¶ 126–37).  Count 3 alleges that the Ordinance violates the First

20  Amendment's Establishment Clause, and Count 4 alleges that the Ordinance violates the

21  First Amendment's Free-Exercise Clause.  (*Id.* at ¶¶ 138–63).

22  **II.    Jurisdiction and Standing**

23      Before proceeding, the Court will address the parties' arguments regarding standing

24  and jurisdiction, as these relate the Court's power to hear this matter.  The Court will first

25  address whether it should retain supplemental jurisdiction over the FERA claim, and then

26  it will address whether Plaintiff has standing to bring a RLUIPA claim.

27      **a.    Supplemental Jurisdiction over FERA Claim**

28      Because the Court has original jurisdiction over Plaintiff's federal claims, it may

1    exercise supplemental jurisdiction over Plaintiff's FERA claim. *See* 28 U.S.C. § 1367(a).

2    Federal courts, however, may decline to exercise supplemental jurisdiction over a state law

3    claim if it "raises a novel or complex issue of State law . . . ." *Id.* § 1367(c)(1). A court's

4    decision on whether to exercise supplemental jurisdiction is informed by consideration of

5    judicial economy, convenience, fairness, and comity. *United Mine Workers of Am. v.*

6    *Gibbs*, 383 U.S. 715, 726 (1966).

7          FERA is a unique statute whose land use provisions sorely lack interpretation and

8    application from Arizona courts. The statute was originally passed in 1999 as defiant

9    expression of Arizona's departure from federal jurisprudence on the issue of what

10   constitutes a religious burden. *See Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d

11   890, 919 (Ariz. 2019); *State v. Hardesty*, 214 P.3d 1004, 1006 (Ariz. 2009). FERA's land

12   use provisions, A.R.S. § 41-1493.03, were passed in 2010, and no Arizona Court has yet

13   interpreted or applied them. 2010 Ariz. Legis. Serv. Ch. 323 (H.B. 2596). This Court

14   recently held in a separate matter that there are many unresolved issues related to FERA

15   land use claims such as whether a party's FERA claims may be tried by a jury and what

16   specific type of relief is appropriate for such claims. *Henry v. City of Somerton*, 2021 U.S.

17   Dist. LEXIS 243162, at *10 (D. Ariz. Dec. 21, 2021).

18         Because FERA's land use claims represent a novel and complex area of Arizona

19   law, the Court will decline to exercise supplemental jurisdiction over Count 2 and dismiss

20   it for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(1).

21         **b. Standing for RLUIPA Claim**

22         Plaintiff brings a claim under RLUIPA's "equal terms" provision, which states that

23   no "government shall impose or implement a land use regulation in a manner that treats a

24   religious assembly or institution on less than equal terms with a nonreligious assembly or

25   institution." 42 U.S.C. § 2000cc(b)(1). Defendant argues that Plaintiff's equal terms claim

26   is not yet ripe because it has not made a *bona fide* attempt to obtain a CUP. (Doc. 17 at 1).

27         Federal courts may only exercise jurisdiction over matters that are ripe. *Guatay*

28   *Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 980 (9th Cir. 2011). Ripeness is

1  a question of timing designed to ensure courts only address live cases or controversies.

2  *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citing

3  U.S. Const. art. III).   For some RLUIPA claims, a party challenging zoning permit

4  requirements must apply for a permit and obtain a final decision to determine if the party

5  has suffered a substantial burden.  *Guatay*, 670 F.3d at 876.

6        Defendant argues that Plaintiff's RLUIPA claim is not ripe because it has not

7  applied for a CUP or obtained a final decision.  For support, Defendant relies primarily on

8  *Guatay*, a case where a church claimed that its religious exercise had been substantially

9  burdened by a zoning ordinance.  670 F.3d at 965.  The Ninth Circuit held the claim was

10  not ripe because the church had not applied for a "Use Permit" and, therefore, the court

11  could not determine if the Church had suffered a substantial burden under RLUIPA until

12  at least one application had been made.  *Id.* at 976.  The court's conclusion drew upon the

13  "final decision requirement" in the Supreme Court's landmark takings case *Williamson*

14  *County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172

15  (1985).  *Id.*  "[T]he Church's failure to complete even one full Use Permit application

16  leaves us unable to discern whether there is a true case or controversy, and any resulting

17  injury."  *Id.* at 980.  Defendant also cites to this Court's decision in *Henry v. City of*

18  *Somerton*, 2021 WL 2514686, at *5 (D. Ariz. June 17, 2021), in which the Court dismissed

19  a claim for damages resulting from the allegedly substantial burden of a zoning ordinance

20  because plaintiffs failed to apply for a CUP as required by *Guatay*.  (Doc. 17 at 6).

21        Plaintiff argues this matter is distinguishable from *Guatay* and *Henry* because it

22  brings a facial challenge to the Ordinance, rather than an as applied challenge.   (Doc. 20

23  at 3, 6).  Plaintiff cites to *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) for the

24  proposition that facial challenges to ordinances need not await a final decision because the

25  nature of a facial challenge does not rely on any decision.  (Doc. 20); *see also Hacienda*

26  *Valley Mobile Ests. v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) ("Facial

27  challenges are exempt from the first prong of the *Williamson* ripeness analysis because a

28  facial challenge by its nature does not involve a decision applying the statute or

- 5 -

1  regulation."). Plaintiff also cites to *Calvary Chapel Bible Fellowship v. Cty. of Riverside*,

2  2017 WL 11631506, at \*6 (C.D. Cal. Apr. 18, 2017), where a court in this Circuit held that

3  facial challenges under RLUIPA are exempt from the final decision rule because of *Yee*.

4  (Doc. 20 at 3).

5  The Court finds that the present matter is distinguishable from both *Guatay* and

6  *Henry*. In *Guatay,* the church had abandoned its equal terms claim. 670 F.3d at 968 at n.4.

7  Instead, the particular RLUIPA claim brought by the church was for a substantial burden

8  of its rights. *See id.* at 976 ("We cannot determine if the Church has suffered a 'substantial

9  burden' under RLUIPA until at least one Use Permit application has been submitted.").

10  Furthermore, the *Guatay* zoning ordinance was described by the Ninth Circuit as "facially

11  neutral . . . ." *Id.* at 982. In *Henry*, the plaintiffs brought what amounted to an as applied

12  claim because the damages plaintiff sought were rooted in the application of a zoning

13  ordinance. 2021 WL 2514686, at \*5, \*9. Therefore, both *Guatay* and *Henry* are not

14  comparable to the present facial challenge.

15  The Court is satisfied that Plaintiff's facial challenge is ripe. Because the alleged

16  injury under RLUIPA's equal terms provision may be present upon a facial reading of the

17  Ordinance, it would not matter whether Plaintiff applied for the CUP. *See Yee*, 503 U.S.

18  at 534. Therefore, the Court finds it has jurisdiction over Plaintiff's RLUIPA claim and

19  will proceed to evaluate Plaintiff's Motion for Preliminary Injunction.

20  **III.    Motion for Preliminary Injunction**

21  Preliminary injunctive relief is an "extraordinary remedy never awarded as of right."

22  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary

23  injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood

24  of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the

25  plaintiff's favor, and (4) that the public interest favors injunctive relief. *Id.* at 20. Having

26  dismissed the FERA claim, the Court focuses its analysis on Plaintiff's likelihood of a

27  successful RLUIPA claim.

28  **a.   Likelihood of Success**

1    RLUIPA is to be broadly construed in favor of the protection of religious exercise.

2    *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1172 (9th Cir.

3    2011).  Under RLUIPA, to establish a *prima facie* equal terms claim, a plaintiff must show

4    (1) the imposition of a land-use regulation, (2) by a government, (3) on a religious

5    institution, and (4) that the regulation treats the religious institution "on less than equal

6    terms with a nonreligious assembly or institution."  *Id.* at 1171.

7    The Court is satisfied that Plaintiff has demonstrated the first three elements of its

8    *prima facie* claim.  Defendant, a government entity, has imposed the Zoning Ordinance, a

9    land-use regulation, on Plaintiff, a religious institution.  The question then is whether the

10   Ordinance treats Plaintiff on less than equal terms with a similarly situated nonreligious

11   entity.  Whether an entity is being treated on less than equal terms heavily depends on

12   context.  "Equality, 'except when used of mathematical or scientific relations, signifies not

13   equivalence or identity, but proper relation to relevant concerns.'"  *Id.* at 1172 (quoting

14   *River of Life Kingdom Ministries v. Village of Hazel Crest*, 611 F.3d 367, 371 (7th Cir.

15   2010) (en banc)).  Generally, courts compare how an ordinance treats religious institutions

16   with secular comparators who are "similarly situated with respect to an accepted zoning

17   criteria."  *Id.* at 1173.  Entities may be similarly situated when they share accepted zoning

18   criteria such as "such as parking, vehicular traffic, and generation of tax revenue."  *Id.*

19   Plaintiff argues that it is similarly situated to public schools and private charter

20   schools, and that the Ordinance treats Plaintiff on less than equal terms than those

21   educational institutions because the Ordinance does not apply to them.  (Doc. 6 at 5).

22   Plaintiff cites Section 201(A)(3) of the ordinance, which states that "publicly owned and

23   operated facilities used for essential government purposes" are exempt from all of the

24   Ordinance's provisions.  (Doc. 25 at 2).  Therefore, Plaintiff argues, public or charter

25   schools may operate in an R1L district, not because they are permitted uses, but because

26   the Ordinance has exempted them from its requirements.  (*Id.* at 4).

27   Section 201(A)(3) exempts public and charter schools, Plaintiff argues, because

28   Arizona case law "specifically exempts public schools and charter schools from zoning

1  regulation." (*Id.*) Indeed, caselaw from the Arizona Supreme Court strongly suggests
2  school districts acting in their governmental capacity are not subject to zoning restrictions,
3  although no court has ever explicitly held this proposition. *City of Scottsdale v. Mun. Ct.*
4  *of City of Tempe*, 368 P.2d 637, 639 (Ariz. 1962) (holding that political subdivisions acting
5  in governmental capacity are not subject to zoning laws); *Amphitheater Unified Sch. Dist.*
6  *No. 10 v. Harte*, 624 P.2d 1281, 1282 (1981) (holding that school districts are political
7  subdivisions of the state). In addition, Arizona law treats charter schools similarly to public
8  schools. A.R.S. § 15-181(A) ("Charter schools are public schools that serve as alternatives
9  to traditional public schools . . . ."). Charters schools may also be publicly funded. *See*
10  A.R.S. § 15-185.

11  Defendant agrees with Plaintiff that, as a matter of Arizona law, Arizona public and
12  charter schools are not subject to zoning ordinances. (Docs. 25 at 2; 26 at 2). And, to be
13  clear, Plaintiff nowhere poses a challenge to Arizona zoning law. Instead, Plaintiff
14  challenges the Ordinance, which Plaintiff itself argues abides by Arizona law to the extent
15  that it does not claim to exercise zoning authority over public and charter schools.

16  This legal exemption of public and charter schools from zoning regulation raises the
17  question of whether they really are similarly situated to Plaintiff. Assuming the parties'
18  interpretation of Arizona law is correct,[2] Defendant could not legally impose any zoning
19  restrictions on public and charter schools, even if it wanted to. The Court finds that whether
20  an entity is subject to zoning regulations is, by necessity, a key zoning criterion. And
21  because the Ordinance *cannot* apply to public or charter schools, those entities are not
22  similarly situated to Plaintiff. Instead, Plaintiff is more similarly situated to private
23  schools, which are also subject to zoning regulations and are also required to obtain a CUP
24  to operate in the R1L zone.

25  Plaintiff cites *Corporation of the Catholic Archbishop of Seattle v. City of Seattle*,
26  28 F. Supp. 3d 1163 (W.D. Wash. 2014), for the proposition that it is similarly situated to

27

28
_____
[2] The Court does not necessarily decide that this is the correct interpretation. It is enough to say that even accepting the parties' interpretation as true, Plaintiff fails to show a likelihood of success on the merits.

1   public schools.  (Doc. 6 at 8).  There, a religious high school in Washington applied for,

2   and was denied, a variance so that it could install 70-foot-tall light poles on an athletic

3   field. 28 F. Supp. 3d at 1165.  The zoning ordinance that required the religious high school

4   to apply for the variance also contained a special exemption for public schools that

5   permitted them to install light poles of up to 100 feet. *Id.* at 1166.  The defendant defended

6   the zoning ordinance by arguing the public-school exception fostered "the provision of

7   public facilities by governmental agencies." *Id.* at 1169.  But the court rejected this

8   argument because the policy to foster public facilities was not an accepted zoning criterion.

9   *Id.* at 1169.

10      *Corporation* is distinguishable from the present matter on several grounds, most

11   notably because Washington public schools, unlike Arizona public schools, were subject

12   to the zoning ordinance.  Here, the Ordinance's exemption of public and charter schools

13   does not stem from Defendant's policy.  The distinction between Plaintiff and public

14   schools is, by Plaintiff's own argument, a tenet of Arizona law.

15      The Court also notes that if it were to find that Plaintiff is similarly situated to an

16   entity that is legally exempt from all zoning regulations, that would lead to the untenable

17   conclusion that Plaintiff should be equally exempt from all zoning regulations.  This is

18   certainly not what RLUIPA requires.  *See Messiah Baptist Church v. Cty. of Jefferson,*

19   *State of Colo.*, 859 F.2d 820, 826 (10th Cir. 1988) ("A church has no constitutional right

20   to be free from reasonable zoning regulations nor does a church have a constitutional right

21   to build its house of worship where it pleases.").

22      Overall, Plaintiff does not show the Ordinance treats religious institutions on less

23   than equal terms with another similarly situated secular comparator, and the Court finds

24   Plaintiff fails to show a likelihood that it will succeed on the merits of its RLUIPA claim.

25      **b.  Conclusion**

26      Because Plaintiff fails to show a likelihood of success on the merits of its case, the

27   Court denies its request for a preliminary injunction.  The Court will likewise deny

28   Plaintiff's Motion for Summary Disposition.

**IV.   Motion to Dismiss**

Defendant's Motion to Dismiss generally requests that the Court dismiss Plaintiff's RLUIPA claim because it is not ripe and that the Court decline jurisdiction over the FERA claim. The Court has already declined to exercise supplemental jurisdiction over Plaintiff's FERA claim because it is a novel and complex issue of Arizona law, and it has held that Plaintiff's facial attack of the Ordinance under RLUIPA is ripe. Defendant argues, in the event that this facial attack is ripe, the Court should dismiss any "as applied" challenge Plaintiff may bring. (Doc. 21 at 6). Plaintiff nowhere argues that it is making an as applied challenge, and under *Guatay*, it could not.

Accordingly,

**IT IS HEREBY ORDERED** that Count 2 of Plaintiff's Complaint shall be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1367(c)(1).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Disposition (Doc. 19) is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Motion to Dismiss (Doc. 20) is **GRANTED** in part and **DENIED** in part.

Dated this 31st day of January, 2022.

Honorable Diane J. Humetewa
United States District Judge